Hawkins, J.,
delivered the opinion of the Court.
It appears, from the record in this case, that, prior to the December Term, 1860, of the County Court for Carroll County, Sarah Seymour, the widow, and others, children of William Seymour, deceased, filed, their petition in the County Court of said County, against William H. and Erancis M. Seymour, infant children of the said William Seymour, deceased; asking, among other things, for the sale of slaves, for purposes *10 of distribution. And, at said term of tbe Court, it appearing that said infant defendants bad been served witb process, and bad no regular guardian, a guardian ad litem was appointed for them, by whom they subsequently answered tbe petitions; and, at tbe January Term, 1861, of said Court, tbe cause was beard upon tbe petitions, answer of tbe minors by their guardian cid li-tem, and tbe evidence in tbe cause; from which, among other things, it appeared to tbe Court, that, owing to the number of distributees, tbe number of slaves, and tbe difference in the ages and value of said slaves, that it was impracticable to make a fair and just division of said slaves, among the1 parties in interest; and that it .would be manifestly to tbe interest of tbe minors, that said slaves be sold. Thereupon, tbe Court proceeded to direct, that tbe Clerk of tbe Court, after giving notice, proceed to sell said slaves, upon a credit of twelve months, taking bond, witb security, for tbe payment of tbe purchase money.
At tbe March Term, 1861, of said Court, tbe following entry was made in tbe cause, to-wit:
“This day came on this cause to be further beard, upon tbe report of tbe Clerk and Commissioner, appointed to sell tbe land and slaves of tbe intestate, William Seymour, deceased; and being unaccepted to, is confirmed, and ordered tc be filed/' No other steps appear to have been taken in tbe cause, until tbe December Term, 1865, of said Court, when a decree was pronounced in the cause, in which it is stated, among other things, “that tbe pleadings in tbe cause are certified to be lost or mislaid.” Tbe decree further *11 recites: “and it further appearing,, that the Commissioner and Clerk reported said sales to the March Term, 1861, of the County Court, which was confirmed, and ordered to be filed, the Clerk and Commissioner, therefore, substitutes the following as the report, as made at the March Term, 1861.” And then follows in the decree, the report substituted by the Clerk, dated December, 1865; and thereupon the- -Court proceeded further to order, “that said report, as substituted for the former, made of this sale of the property above specified, is, in all things, confirmed.”
Prom this substituted report, as set out in the decree, it appears, C. -W. Keaton became the purchaser of four slaves, at the sale -made by the Clerk, at the price of $1,771, for the payment of which -he executed his note, due February 20, 1862, with W. J. Keaton, Abner McCollum, and J. C. McCollum, as his sureties. At the said December Term, 1865, of said Court3 upon motion, a judgment was rendered in favor of the Clerk and Commissioner, Graves, against said purchaser and his said sureties, for $595, the balance, as it is stated, due upon said note, together with the further sum of $144, interest; to reverse which a writ of error is prosecuted to this Court.
It is insisted, and we think correctly, that the proceedings in the County Court were irregular, and the judgment erroneous. Neither the petition, or answer, or the report of the sales, made to the March Term; 1861, are in the record. In one of "the decrees of the Court, made at the December Term, 1865, it is stated that “the pleadings in the case are ~ certified to have *12 been lost or mislaid; but no attempt bas been made, to supply them. The certificate of their loss is not in the record, nor does it appear by whom the same was made. The decree ordering the sale, fails to mention the names of the slaves directed to be sold, but directs that the slaves “mentioned in the petition,” be sold; therefore, without the petition, we cannot see what slaves were directed to be sold. .
Inasmuch as the Clerk, at the December Term, 1866, attempted to substitute a report of the sale, for the report made to the March Term, 1861, a conjecture might arise, that the report made to the March Term, 1861, had been lost or destroyed; but the fact that such was the case, was not alleged, nor did it appear; and ‘the only apparent reason, as disclosed by the record for the attempted substitutions, is, that it appeared that the sale had been reported to the March Term, 1861. This, certainly, was no reason whatever.
By section 3907 of the Code of Tennessee, it is provided that “any record, proceeding, or paper filed, in actions at law or equity, if lost, or mislaid unintentionally, or fraudulently made away with, may be supplied upon application, under the orders of the Court, by the best evidence the nature of the case will admit of.” Before ■ any such lost record, or paper, or proceeding can be supplied, an application must be made to the Court in which the action is pending, for that purpose; and such application must be supported by satisfactory evidence, that the same, has been so lost or made away with; then the same may be supplied, under the order of the Court; but not otherwise. *13 There was no evidence before the Court, at its December Term, 1865, that the report made to the March Term, 1861, had been lost; no application was made to have the same supplied; neither did the Court make any order that the same be done. The Clerk had no power to supply a lost record, or to substitute the report made to the. December Term, 1865, for the one made to the March Term, 1861. Therefore, it cannot be regarded otherwise, than as an original report, made to the December Term, 1865.
The order made at the March Term, 1861, confirming the report made to that Term, does not show whether there was a report of the sale of the slaves or not. If it were a report of the sale of the slaves, in pursuance of the decree directing the same, and showed that the purchasers had complied with the terms, as required upon the confirmation thereof, the sale became complete, and the purchasers became vested with the title to the slaves, without any formal decree directing and vesting the same: See the cases of Curd and Wife vs. Bonner; and Young et al. vs. Thompson, determined by this Court at Nashville, during the last term, and the cases there cited. The pecuniary loss consequent upon the emancipation of slaves, by the amendment of the Constitution of the .State, adopted one the 22d day of February, 1865, must be borne by those who were the owners of such slaves at the time of their emancipation. Until the sale is completed by the Court, of the report of the sale, the purchaser ac-qirires no title to the property. It follows, as a consequence in this case, if there were no confirmation of *14 the sale of the slaves, until December, 1865, the title, at the time of their emancipation, was in the hands of William Seymour, deceased; and since the 22d of February, 1865, neither the heirs, or the Court, could 'vest title thereto in the purchasers.
The provisions of the amendment to the Constitution of the State, abolishing slavery, constitute a part of the public law of the land, of which the Courts of the country are bound to take judicial notice. Hence, it was not necessary that the purchasers should .have formally excepted to the report of the sale, filed at the December Term, 1865, in order to have brought to the knowledge of the Court, the fact of the emancipation of the Slaves, or the failure of title in ■ the parties before the Court, in order to entitle them to be relieved.
The proceedings in-this cause in the County Court, so far as we can see, prior to the December Term, 1865, though not entirely free from both clerical and formal errors, seem to have been in substantial compliance with the requirements of law. But, for the reasons stated in this opinion, we think the judgment of the County Court is erroneous.
It will, therefore, be reversed, and the cause remanded.